IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )
     v.                     )     CRIMINAL ACTION NO.
                            )       3:09cr203-MHT
JOHN ERNEST JOHNSTON        )          (WO)
```

OPINION

The cause is before the court on defendant John Ernest Johnston's motion to dismiss the indictment due to a violation of his Sixth Amendment right to a speedy trial. The motion is due to be granted in part and denied in part.


I. **Background**

On November 3, 2009, Johnston robbed a bank in Columbus, Georgia. A witness recorded the license plate number of his vehicle as he fled the scene and the bank teller was then able to identify Johnston's photograph from a line-up. The following day, he was arrested at his home in Newnan, Georgia.

Once in police custody, Johnston made a written confession to having robbed another bank on September 8, 2009, in Phenix City, Alabama. It is for charges stemming from the Alabama robbery that Johnston is now before the court.

On December 16, 2009, an Alabama grand jury charged Johnston in a two-count indictment for the Alabama robbery. The first count charged him with robbery of a federally insured bank in violation of 18 U.S.C. § 2113(a); the second count charged him with possessing a firearm in furtherance of a crime of violence (the bank robbery), a violation of 18 U.S.C. § 924(c)(1)(A). A sealed arrest warrant was issued for Johnston the next day. On December 23, 2009, the United States Marshals placed a detainer on Johnston with the Muscogee County Jail in Georgia.

Johnston was arraigned in Georgia for the Georgia robbery on May 19, 2010. He repeatedly asked to have his Georgia and Alabama cases consolidated pursuant to

Federal Rule of Criminal Procedure 20. That rule provides that a prosecution may be transferred from a district where the indictment is pending to a district where the defendant is held. In order for this to occur, the defendant must agree to plead guilty and waive his right to trial in the district where the indictment is pending, and the United States attorneys in both districts must approve the consolidation. Fed. R. Crim. P. 20.

Johnston agreed to plead guilty to the charges in Alabama in an effort to speed their adjudication. His offer was rebuffed. As recounted by Johnston's Georgia defense attorney, "all the parties involved were aware that Mr. Johnston had also been indicted in the Middle District of Alabama" and "Mr. Johnston expressed a desire to resolve both cases at one time, and as quickly as possible." Williams Aff. (Doc. No. 51, Ex. 1) at ¶¶ 6-8. Johnston's attorney and the United States attorney for Johnston's Georgia case discussed the possibility of a

Rule 20 transfer.  Johnston's attorney was told only that
"this could not be done and that Mr. Johnston would have
to go to Alabama [to] face prosecution on [the] Alabama
indictment."  <u>Id</u>.

   The government has yet to explain why it refused to
approve the Rule 20 request and accept Johnston's guilty
plea.  At  Johnston's  hearing  in  this  court,  the
prosecuting attorney from the Middle District of Alabama
stated  that  she  attempted  "to  do  a  universal  plea
agreement and simply send the case to Georgia for their
resolution," but that after three weeks of "play[ing]
phone  tag"  with  Johnston's  attorney  the  matter  was
dropped.  Sent'g Hrg. Trans. (Doc. No. 55) at 14:19-25.

   Johnston pled guilty to the Georgia robbery on July
27, 2010, and was sentenced to a term of 51 months on
January 6, 2011.

   By  all  accounts,  Johnston  should  have  then  been
immediately transferred to the Middle District of Alabama
to face the charges stemming from the Alabama robbery.

4

Instead, he was transferred to a federal prison, where he sat, and waited, for over a year. When this court asked the Alabama prosecuting attorney why she did not seek to prosecute Johnston during this time, she repeated that she telephoned Johnston's Georgia defense counsel, but admitted that she made no efforts after Johnston entered his guilty plea in Georgia.

Asked why nearly two years passed before Johnston was arraigned in Alabama, the Alabama prosecuting attorney acknowledged she "didn't have an explanation to offer." Sent'g Hrg. Trans. (Doc. No. 55) at 58:5. In its brief, the government suggests the United States Marshal Service for the Middle District of Georgia failed to act on Johnston's detainer at the close of the Georgia case and instead transported him to federal prison. Resp. (Doc. No. 47) at 2 n. 1.

During this time Johnston was without legal representation. Nonetheless, he continually sought to return to Alabama to face the charges against him.

Johnston wrote five letters to the United States Attorney for the Middle District of Alabama begging to be brought to Alabama for arraignment.  Johnston Aff. (Doc. No. 60, Ex. 17) at ¶ 8.  He also had his wife write to the United States Attorney.  Beverly Johnston Aff. (Doc. No. 60, Ex. 18) at ¶ 4.  Not only did the government fail to hale Johnston into court, it failed to acknowledge the letters.  Being confined in prison, Johnston could not drive himself to the front steps of the United States Attorney's office and insist on prosecution, but had he been free, the court believes he would have done just that.

Johnston reports experiencing stress and anxiety due to the pending charges.  Johnston Aff. (Doc. No. 51, Ex. 2) at ¶¶ 6-9.  He had no defense attorney to lend him counsel, and he had no idea when he would be released, because he had no idea when he would even be allowed to start serving his sentence.

The Middle District of Alabama did not hale Johnston into court until March 7, 2012.  He was arraigned March 13, 2012.  Johnston initially pled not guilty, then changed his plea to guilty on July 13, 2012.  He filed a motion to withdraw his plea and has not yet been sentenced.

## II.  <u>Discussion</u>

Johnston argues that the 27-month period between his indictment and arraignment violated his right to a speedy adjudication of the charges against him.  As a preliminary matter, Johnston does not assert a violation of the Speedy Trial Act.  The 70-day Speedy Trial Act window is not triggered until indictment or arraignment-- whichever occurs later.  18 U.S.C. § 3161(c)(1).

Johnston's claim instead hinges on the Speedy Trial Clause of the Sixth Amendment to the Constitution.  U.S. Const. Amend. XI.  Unlike the Speedy Trial Act, the constitutional guarantee is triggered upon arrest or

7

indictment, whichever occurs first.  <u>United States v. Marion</u>, 404 U.S. 307, 313, 320 (1971); <u>United States v. Knight</u>, 562 F.3d 1314, 1323 (11th Cir. 2009).

In evaluating Johnston's Sixth Amendment claim, the court follows the four-factor analysis prescribed in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972).  The court considers (1) the length of the delay, (2) the reason for the delay, (3) whether Johnston asserted his right to a speedy trial, and (4) whether he was prejudiced by the delay.  <u>Id</u>. at 530.

### A.  <u>Length of Delay</u>

The first factor, length of delay in bringing the defendant to trial, is also a triggering mechanism for the full <u>Barker</u> analysis.  "Delays exceeding one year are generally found to be 'presumptively prejudicial'" and thus meet the threshold requirement.  <u>United States v. Ingram</u>, 446 F.3d 1332, 1336 (11th Cir. 2006) (citing <u>Doggett v. United States</u>,  505 U.S. 647, 652 n. 1 (1992)

8

and <u>United States v. Clark</u>, 83 F.3d 1350, 1352 (11th Cir. 1996)).

Here, 27 months elapsed between the time Johnston was indicted on the Alabama charges and arraigned in the Middle District of Alabama.  However, only the 14-month delay between Johnston's sentencing and his arraignment in the Middle District of Alabama is attributable to the government.  The other half of the delay was caused by the prosecution of Johnston in the Middle District of Georgia.  Because prosecution in another jurisdiction is a valid reason for delay, only the 14-month delay weighs against the government.

The 14-month delay attributable to the government exceeds the one-year baseline, and the total 27-month period between indictment and arraignment far exceeds it. Johnston has thus shown presumptive prejudice from the delay sufficient to trigger the full <u>Barker</u> analysis.

As for the weight accorded this delay, delay in a "serious, complex" case is more tolerable than delay in

an "ordinary," uncomplicated case.  Barker, 407 U.S. at 530.  The instant case is an uncomplicated, single-defendant prosecution for which the government had already obtained a written confession.  But 14 months is not so long that this factor weighs heavily against the government.  See Clark, 83 F.3d at 1354.

B.  Reason for Delay

The next factor to consider is the reason for the delay.  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."  Barker, 407 U.S. at 531.  "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  Id.  "Although negligence is ... weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of

the divide between acceptable and unacceptable reasons
for delaying a criminal prosecution once it has begun."
Doggett, 505 U.S. at 657.  Moreover, "Condoning prolonged
and unjustifiable delays in prosecution," such as this,
would "penalize many defendants for the state's fault and
simply encourage the government to gamble with the
interests of criminal suspects assigned a low
prosecutorial priority."  Id.

The government has conceded its negligence in
Johnston's prosecution.  In the government's own words:
"It is clear that the Middle District of Alabama did not
diligently pursue the prosecution of this case by
monitoring the case in the Middle District of Georgia."
Gov't's Br. (Doc. No. 57) at 8.  Though acknowledging
ultimate responsibility, the government pins blame on the
United State Marshal Service of Georgia for failing to
effect the detainer at the "completion of the Middle
District of Georgia case."  Resp. (Doc. No. 47) at 2
n. 1; Gov't's Br. (Doc. No. 57) at 3 n. 1.

This court agrees that the government was negligent in its prosecution of Johnston.  Unlike the government, the court finds the negligence intolerable.

The government's own evidence refutes the suggestion that fault lies with the Georgia United States Marshal Service.  The United States Marshal for the Middle District of Alabama filed a detainer with the federal prison housing Johnston on February 23, 2011.  Detainers (Doc. No. 58, Ex. 1) at 4.  This detainer differs from the two earlier detainers filed against Johnston because whereas the earlier two were captioned, "DETAINER AGAINST UNSENTENCED FEDERAL PRISONER," this detainer was captioned, "DETAINER AGAINST SENTENCED FEDERAL PRISONER." Id. at 2-4 (emphasis added).  Therefore, at least as of February 23, 2011, the Middle District of Alabama knew full well that Johnston had been sentenced on the Georgia robbery.  The February 2011 detainer differs in substance as well.  While the first two detainers request that the custodian alert the Middle District of Alabama when the

12

defendant is sentenced, the final detainer asks the custodian to notify the Middle District of Alabama upon the subject's release from custody.  There was thus no reason for the Middle District of Alabama to sit on its hands after filing this detainer; it knew no further notice was due from the Middle District of Georgia until after Johnston finished serving the Georgia sentence.

Finally, the government's evidence shows that the Marshal Service for the Middle District of Alabama received a notice from the federal prison holding Johnston on March 30, 2011.  The notice advised the Middle District of Alabama that Johnston was in the custody of the Bureau of Prisons; that a release date had been set for July 16, 2013; and that the next notice would come 60 days before his release.  Id. at 6.

It is therefore perfectly clear from the government's own records that it had every reason to know the Georgia case against Johnston was over, and yet the Middle District of Alabama let its own case against Johnston

13

languish.   The government's serious negligence weighs heavily in Johnston's favor.   See Ingram, 446 F.3d at 1339 (finding government's negligence and lack of diligence weighed heavily against it, even though there was no evidence the government acted in bad faith).

C.   Assertion of the Right

While the "primary burden ... to assure that cases are brought to trial" rests with the courts and prosecutors, a defendant's "assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32.

This factor is particularly important because a defendant's strenuous assertion of his right to go to trial operates as evidence that the defendant is actively being harmed by the delay. "The strength of [the defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay,

14

and most particularly by the personal prejudice, which is not always identifiable, that he experiences." Id. at 531. In other words: "The more serious the deprivation, the more likely a defendant is to complain." Id.

The Court in Barker opted for a functional rather than formal review of a defendant's efforts to hasten prosecution. By incorporating consideration of a defendant's assertion of this right into a balancing approach, the Court meant to allow "the trial court ... to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed." Id. at 529. The Court also preferred this approach because it permits courts "to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." Id.

Here, the court is impressed that Johnston made persistent and repeated attempts to bring his case to prosecution.  The defense submitted two affidavits, one from Johnston and one from his wife, attesting to this basic fact.  The affidavits reflect that Johnston had his wife look up the address for the United States Attorney in the Middle District of Alabama.  Johnston Aff. (Doc. No. 60, Ex. 17) at ¶ 4; Beverly Johnston Aff. (Doc. No. 60, Ex. 18) at ¶ 6.  He then wrote three letters to the United States Attorney for the Middle District of Alabama in 2010 and 2011 while in jail in Georgia.  Johnston Aff. (Doc. No. 60, Ex. 17) at ¶ 9.  He wrote two more letters from federal prison in 2011.  Id.  He also asked his wife "to write a letter to the U.S. Attorney requesting a hearing and sentencing on the robbery in Alabama"; she sent just such a letter "around January 2011."  Beverly Johnston Aff. (Doc. No. 60, Ex. 18) at ¶ 4.

Neither Johnston nor his wife had any of these letters returned to them, nor has the government

16

challenged their contention that they did in fact mail the letters. This court finds that the letters were sent as Johnston and his wife attest. <u>See</u> <u>Hagner v. United States</u>, 285 U.S. 427 (1932) (reciting rule that a letter properly addressed and placed with the post office is presumed actually received by addressee).

Because Johnston strenuously sought speedy prosecution of the pending indictment, this aspect of the <u>Barker</u> weighing test weighs mightily against the government.

The government's counter-evidence is unavailing. The government argues that because the standard detainer form advises defendants of the right to invoke a speedy trial (under the Speedy Trial Act) and outlines the procedure for doing so, Johnston's failure to follow that procedure is evidence that he failed to assert his speedy trial right. The government points to the detainers it says were placed in this very case as support for this argument. Gov't's Br. (Doc. No. 57) at n. 4. Once

17

again, the evidence does not bear out the government's assertions.

The only information on speedy trial rights given in the first and second detainers filed is that the "notice and speedy trial requirements of the Interstate Detainer Agreement do NOT apply."[1] Detainers (Doc. No. 58, Ex. 1) at 2 & 3. The third detainer, the one filed February 23, 2011, after Johnston was sentenced on the Georgia charges, is more informative. It states that a person in Johnston's situation must be advised of the detainer's existence and of his right to demand a speedy trial, albeit under the Speedy Trial Act. Id. at 4. The detainer form, however, allows two methods for executing

---

1.   Johnston's Georgia defense counsel testified that, as a matter of policy and practice, her office would have forwarded the detainer in its file to Johnston. However, counsel was referring to the first detainer filed against Johnston, which was placed with the Muscogee County jail. October 25, 2012, Evid. Hg. (Gov't Ex. 1). Again, this detainer form does not advise the defendant of his speedy trial right nor does it explain how to assert this right. Georgia defense counsel did not mention the third, more informative detainer, likely because this detainer was filed after her representation of Johnston ended.

18

the detainer: the custodian can use the same form
provided by the Middle District of Alabama or it can use
its own form.  If the custodian uses the Middle District
of Alabama form, the custodian must present the detainer
to the defendant,  leave a copy of it with the defendant,
and return a completed copy to the Middle District of
Alabama.  The form requires the defendant's signature as
acknowledgment of his receipt and understanding of the
process for invoking the Speedy Trial Act's protection.

   The detainer form sent to the federal prison holding
Johnston is not signed nor otherwise acknowledged by any
receiving party.  Detainers (Doc. No. 58, Ex. 1) at 4-5.
The sole acknowledgment of the detainer is a prison-
notice form from the federal prison holding Johnston,
stating that the detainer was filed and advising the
Middle District of Alabama of Johnston's expected release
date.  Id. at 6.  Notably, the prison form does not state
that the custodian alerted Johnston of his speedy trial

rights, nor that a copy of the detainer was left with Johnston.

None of the detainer forms, therefore, contradicts Johnston's own account of how he learned of the detainer's existence. Johnston states that his case manager advised him he was subject to a detainer from the Middle District of Alabama and explained this meant he would not be released on his scheduled release date. Johnston Aff. (Doc. No. 60, Ex. 17) at ¶ 7. He says his case manager did not tell him he had a right to a speedy trial. Id. Since the case manager did not tell Johnston of his right to a speedy trial, it is fair to infer the case manager also did not tell him how to invoke the speedy trial right. In sum, the court finds the detainer forms less-than-persuasive evidence that Johnston was advised of his right to a speedy trial and the process for asserting it while in custody.

At any rate, the process outlined in the third detainer form is not so different from the steps Johnston

took.   The detainer form advises the defendant to file
his request with the prison custodian, who will then
forward it to the Middle District of Alabama United
States Attorney's office.   By sending his requests
directly to the United States Attorney's office, Johnston
substantially complied with that procedure.

The court is therefore satisfied that Johnston
strenuously asserted his right to a speedy trial by
repeatedly writing to the United States Attorney for the
Middle District of Alabama and expressing his desire to
face prosecution.[2]

---

2. Nor does the court find Johnston's claim defeated
by waiver.   Johnston notified the United States Attorney
for the Middle District of Alabama a total of six times
that he wanted to be brought to Alabama for prosecution.
He received no response.   After his arraignment, Alabama
defense counsel made a motion to continue trial so she
could better prepare.   Because Johnston's six earlier
requests were never acknowledged nor ruled on, the court
finds that his defense counsel's subsequent motion to
continue did not waive his earlier unanswered assertions.

D.  <u>Prejudice</u>

Where the first three factors weigh heavily against the government, a defendant need not show "actual" prejudice to warrant dismissal.  <u>Ingram</u>, 446 F.3d at 1336.  In <u>Ingram</u>, the Eleventh Circuit Court of Appeals found the defendant's constitutional right to a speedy trial was violated solely on the basis of the first three factors and thus did not require the defendant to show actual prejudice.  <u>Id</u>. at 1340.

The defense urges that similarities between Johnston's case and the <u>Ingram</u> case renders actual prejudice similarly unnecessary.  But in deciding that it would presume prejudice in <u>Ingram</u>, the court of appeals considered not only the two-year, post-indictment delay, but also an additional two-year, pre-indictment delay.  <u>Id</u>. at 1339 ("[T]he two-year post-indictment delay in this case weighs more heavily than a two-year delay in another case might if, in that case, the post-indictment delay began shortly after the allegedly criminal acts

occurred."). Johnston did not suffer pre-indictment delay; the length of the delay in his prosecution thus weighs significantly less heavily than did the total four-year delay in the <u>Ingram</u> prosecution.

Moreover, in another case the court of appeals found that a 17-month delay attributable solely to government negligence did not excuse the defendant from showing prejudice. <u>Clark</u>, 83 F.3d at 1354 (analyzing delay between indictment and arrest). Here, only 14 months out of the 27-month delay are attributable to the government's negligence. <u>See id</u>. at 1353-54 ("[W]e agree ... that a 14½-month delay caused by government negligence is insufficient to excuse a defendant from making ... a showing [of particularized prejudice]."). Because the length of the delay does not weigh heavily in Johnston's favor, he must show actual prejudice from the delay.

Prejudice in this context is considered in light of the interests the speedy trial right protects. In

Barker, the Court identified three such interests: (i) prevent undue and oppressive pretrial incarceration, (ii) minimize the concern and anxiety of the accused, and (iii) limit the possibility that delay will impair the defense. 407 U.S. at 532. Johnston asserts prejudice in the form of the first two of these speedy trial concerns.

The Supreme Court has long held that a person already incarcerated on separate charges has an equal right to Sixth Amendment protection and has recognized that the three driving concerns of the Speedy Trial Clause are "aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction." Smith v. Hooey, 393 U.S. 374, 378 (1969).

Nonetheless, the government takes the position that "the defendant was incarcerated during the delay of prosecution and, therefore, not subject to undue and oppressive incarceration." Gov't's Br. (Doc. No. 57) at 11. This conclusory position finds no support in the case law nor in the facts of this case.

In _Smith v. Hooey_, the Supreme Court acknowledged that, "At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.'"   393 U.S. at 378.   "But," the Court continued, "the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge."   _Id_.   The Court considered the loss of a possibility of a concurrent sentence to typify this form of prejudice, realizing that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed."   _Id_.; _see also_ _Edmaiston v. Neil_, 452 F.2d 494, 499 (6th Cir. 1971) (construing loss of possibility of concurrent sentencing as prejudice under _Barker_); _United States v. Strunk_, 467 F.2d 969, 972 (7th Cir. 1972) (same) rev'd on other

grounds, 412 U.S. 434 (1973); <u>Prince v. Alabama</u>, 507 F.2d
693, 707 (5th Cir. 1975)[3] (same).  This court finds that
the loss of the opportunity to benefit from a concurrent
sentence, at least where the defendant stood a
substantial likelihood of receiving the concurrent
sentence, is actual prejudice of the kind contemplated by
<u>Barker</u>.  See <u>Smith</u>, 393 U.S. at 378; <u>United States v.
Rucker</u>, 464 F.2d 823, 826 (D.C. Cir. 1972) (finding
prejudice from loss of a concurrent sentence where there
was a "reasonable probability" that the defendant would
have received the concurrent sentence absent the delay);
<u>United States v. Grimmond</u>, 137 F.3d 823, 829 & 830 at n.
10 (4th Cir. 1998) (rejecting defendant's claim in
absence of a "credible showing" that defendant's sentence
was "substantially affected" by the delay, and agreeing
that in another case a delay could affect the defendant's
sentence by making him "ineligible for a concurrent or

------

3.    The Eleventh Circuit has adopted as precedent
all decisions of the former Fifth Circuit rendered prior
to October 1, 1981.  See <u>Bonner v. City of Prichard</u>, 661
F.2d 1206, 1207 (11th Cir. 1981)(en banc).

partially concurrent sentence"); <u>Rashad v. Walsh</u>, 300 F.3d 27, 43 (1st Cir. 2002) (stating requirement that defendant show some likelihood that a concurrent sentence would have been imposed absent delay); <u>but see</u> <u>Trigg v. Tennessee</u>, 507 F.2d 949, 954 (6th Cir. 1974) (acknowledging that loss of concurrent time was not "unduly speculative" in defendant's case, but finding that the degree of time lost was minor); <u>United States v. Graham</u>, 538 F.2d 261, 265 (9th Cir. 1976) (viewing loss of possibility of concurrent time as prejudice under <u>Barker</u> but finding it insufficient proof of a speedy trial violation); <u>United States v. Lainez-Leiva</u>, 129 F.3d 89, 92 (2d Cir. 1997) (finding no prejudice from "the loss of a mere possibility of a fully concurrent sentence").

Johnston argues that his pretrial incarceration was "undue and oppressive" because it had a dramatic effect on his ability to receive a partially concurrent sentence.  This court agrees.  In fact, it was the

presence of this very issue that alerted the court that the defendant's right to a speedy trial may have been violated.

When Johnston appeared for sentencing he faced a sentencing range under the federal guidelines of 37-to-46 months for count one, and a mandatory seven-year-consecutive sentence for count two. 18 U.S.C. § 924(c)(1)(D)(ii). Had Johnston proceeded directly from sentencing in the Middle District of Georgia to arraignment on the instant charges, and then from arraignment to sentencing, he would more likely than not have faced sentencing in July 2011.[4] At that point the court could have run 24 months of the Alabama sentence concurrently with the Georgia sentence. But by the time Johnston actually appeared for sentencing, he had served all but nine months and 20 days of the Georgia sentence.

---

4. Johnston proceeded from arraignment to sentencing in roughly six months on the charges in the Middle District of Alabama. Had he been arraigned immediately after the close of his case out of the Middle District of Georgia, the same six-month time frame would put his sentencing at or around July 2011.

28

Though he had been incarcerated for nearly three years for the Georgia robbery, this court could not credit that time in imposing a sentence.  The court's power to do so is constrained by law, as the district courts have no authority to order a retroactive concurrent sentence.  18 U.S.C. § 3585(a) & (b).

Johnston thus faced a 37-month sentence on count one, only nine months and 20 days of which could potentially run concurrently with the sentence he was then serving. The Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220, 258-259 (2005), clarified that the sentencing guidelines are not mandatory, but they are advisory and must be considered.  District courts are "obliged to 'consult' and 'take into account' the Guidelines in sentencing."  <u>United States v. Crawford</u>, 407 F.3d 1174, 1178 (11th Cir. 2005) (emphasis omitted). They are thus the starting point in every federal sentencing.

The prejudice to Johnston from the loss of the option of a concurrent sentence was not merely hypothetical. His Georgia defense counsel testified that the plan had always been to advocate for a concurrent sentence because Johnston was a sympathetic client and it was an unusual case.   In her professional judgment, Johnston had a strong case for concurrent sentencing.

The court concurs.   At the time Johnston committed the bank robbery in Alabama he was 57 years old and unemployed for the first time in his life.   After working 33 years at the same job, Johnston lost his house and two cars.   He lost his health insurance, was diagnosed with diabetes and underwent surgery for a detached retina. Under the weight of staggering hospital bills and liens, he and his wife were forced to share an apartment with another couple.   Then the couple moved out, leaving Johnston and his wife with rent they could not pay and near-certain eviction.   When Johnston made the rash decision to stick up a federally insured bank in Alabama,

30

his utility providers were threatening to turn off service to the apartment.

At sentencing, Johnston's wife, sister-in-law, son, daughter, and step-daughter spoke on Johnston's behalf. They described him as a good husband, brother, father and grandfather--caring, dependable, and nonviolent. All expressed extreme shock at learning Johnston had robbed these banks, and all attributed his conduct to his family's dire financial circumstances. Moreover, though Johnston revealed a handgun tucked into his pants to the bank tellers, he did not physically harm anyone during either robbery. After he was arrested, he immediately accepted responsibility and wrote out a verbal and written confession to both robberies. The two robberies were separated by a short period of time and were performed in a nearly identical fashion and for an identical purpose, all of which supports fashioning a sentence for Johnston that is reasonable as a whole.

31

Based on these facts, Johnston had a strong likelihood of succeeding on his request that the sentence for count one run concurrently with the Georgia sentence. The delay in his prosecution thus resulted in the irrevocable loss of 15 months of concurrent time.

To compensate for this lost time, Johnston was put in the daunting position of asking this court to vary downward from a guidelines range of 37-to-46 months (for count one) to a sentence of nine months and 20 days. In terms of offense levels, Johnston asked the court to vary downwards ten offense levels, from an offense level of 20 to ten.[5] USSG § 5A (Sentencing Table). Absent the government's delay, Johnston would have been in a far better position at sentencing, as he could have asked for a completely concurrent sentence of 24 months on count one, and to impose such a sentence this court would have needed to vary downward just four offense levels, rather than ten.

_____

5. Johnston had a criminal history category of II, due to the Georgia robbery.

32

The court rejects any argument that, because this court has discretion to vary downward and compensate for the lost concurrent time, there can be no prejudice. Concurrent sentencing is a wholly different sentencing mechanism from a downward variance.  When a court varies downwards to impose a sentence of mere months, any reasonable person reviewing the criminal judgment would believe that the reduced sentence reflects the court's determination that the crime was not serious.  This is because the length of a sentence reflects the court's appraisal of the severity of the crime committed.  The United States Sentencing Guidelines incorporate this commonsense perception.  In calculating an offender's criminal history score, the guidelines allocate three criminal history points (the greatest number of points available) for each prior sentence of imprisonment exceeding one year and one month.  USSG § 4A1.1(a).  The relevant inquiry is the length of the sentence actually imposed, not the sentence that was possible.  USSG

§ 4A1.2(b)(1).   Nor do the guidelines afford less
criminal points to prior sentences of imprisonment that
were ordered to run concurrently.[6]   The logic behind this
guideline is that the length of the sentence imposed is
a strong indicator of future dangerousness, and that this
is true whether or not the court ran the sentence
concurrently with a prior sentence.

Even though a ten-level variance is far beyond what
this court would normally consider, and even though a
sentence of a few months for the bank robbery charge does
not, in the court's opinion, reflect the gravity of that
crime, this court would likely vary downwards to rectify

_____

6.   The only way the criminal history score is
affected by the concurrent/consecutive distinction is if
the prior sentences are considered as one sentence for
guidelines purposes; this occurs where there is no
intervening arrest between the offenses, or where the
sentence was imposed on the same day as another prior
sentence or if the two prior sentences were charged in
the same charging instrument.  USSG § 4A1.2(a).  None of
these situations apply to Johnston, meaning that if he
were sentenced for a crime after this sentencing, the
Alabama sentence and the Georgia sentence would count
separately and the points afforded would not be affected
by whether this court ran the sentences concurrently or
consecutively.  Id.

the prejudice to Johnston.  But it is, decidedly, not the court's job to compensate for egregious governmental negligence and delay.  The Supreme Court has rejected such back-end fixes to speedy trial violations.  In United States v. Strunk, the Seventh Circuit Court of Appeals found that where the prejudice under the Barker test was a lost opportunity for a concurrent sentence, such a violation could be remedied by discounting the sentence by the lost concurrent time.  467 F.2d at 972. In reviewing the propriety of the court of appeals' decision to discount the sentence, the Supreme Court found this an insufficient remedy for the violation of a constitutional right.  Strunk v. United States, 412 U.S. 434, 439-40 (1973).  While the question before this court is different, as it is tasked with evaluating whether a speedy trial violation occurred at all, Strunk's lesson still resonates.  That lesson, in this court's view, is that discounting a term of years to compensate for governmental delay is an inappropriate safeguard of

35

constitutional rights.  Indeed, absent a mandatory
minimum sentence, courts confronting a speedy trial issue
at sentencing would always be able to vary downwards from
the guidelines and "fix" the government's mistakes.  If
the opportunity for a downward variance from the court
were enough to eradicate prejudice and with it, the
defendant's claim, prosecutors would have a new incentive
to de-prioritize the prosecutions of defendants like
Johnston.  But "the public interest in a broad sense, as
well as the constitutional guarantee, commands prompt
disposition of criminal charges."  Id. at 439 n. 2.
Removing the ability of the courts to penalize the
government for egregious delay in bringing such cases to
trial would weaken the courts power to spur the
government towards speedy resolution of the cases it
prosecutes and would encourage the government to
prioritize certain prosecutions while letting lower
priority prosecutions wither on the vine.[7]  See Doggett,

_____

    7.  The Tenth Circuit Court of Appeals, in an
unpublished decision, came out the other way on this

36

505 U.S. at 657 (cautioning courts not to "encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority").

Although the court is satisfied that Johnston has suffered actual prejudice from the loss of his right to ask for concurrent time, this prejudice extends only to count one. The second count carries a mandatory minimum consecutive sentence, meaning Johnston had no opportunity

_____

question, finding that the fact that the district court had the option to vary downward at sentencing to account for the loss of the possibility of a concurrent sentence and decided not to do so, meant that there was no prejudice from the lost possibility. U.S. v. Cone, 310 Fed. Appx. 212, 220-21 (10th Cir. 2008). But that case is distinguishable on its facts; whereas the Tenth Circuit found that the district court's refusal to vary downwards at sentencing showed the defendant a poor candidate for a concurrent sentence, making the complained of grievance very hypothetical, id., this court is uniquely well positioned to evaluate the likelihood that Johnston would have benefitted from the option of a concurrent sentence, and has indeed found that a concurrent sentence was likely here. Moreover, for the reasons explained, the court finds the reasoning of the dissenting judge in Cone more persuasive: the availability of other forms of relief "is not... sufficient to extinguish the prejudice" from loss of the opportunity to request a concurrent sentence. Id. at 224 (Holloway, J.) (dissenting).

for (and no likelihood of receiving) a concurrent sentence as to this count.

The court recognizes that Johnston experienced anxiety as a result of the uncommonly long delay. In extraordinary circumstances such anxiety could rise to the level of actual prejudice. "[W]hile it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' ... an outstanding untried charge ... can have fully as depressive an effect upon a prisoner as upon a person who is at large." Smith, 393 U.S. at 379. "The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving--uncertainties that a prompt trial resolves." Strunk, 412 U.S. at 439 (citations omitted). Here, however,

there is no evidence that the anxiety Johnston experienced was of such a degree that his anxiety, standing alone, satisfies Barker's prejudice prong. See Graham, 538 F.2d at 265 (rejecting defendant's "conclusory allegations of general anxiety and strain" as insufficient evidence of prejudice); Trigg, 507 F.2d at 955 (finding defendant's depression from delay was minimal prejudice not rising to the level of a speedy trial violation). As such, the court finds that Johnston has shown minimal prejudice as to count two.

E.  Balancing the Four Factors

With regards to count one, each of the four Barker factors weighs toward finding that the 27-month delay in this case, 14 months of which resulted from severe governmental negligence, violated Johnston's constitutional right to a speedy trial. With regards to count two, however, only three out of the four factors weigh towards a speedy trial violation. Although the

39

second and third factors (assertion of the right and reason for delay) weigh heavily against the government, the first factor (length of delay) weighs moderately against the government, and the final factor (actual prejudice) is lacking.  See United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999) ("[I]n this circuit, a defendant generally must show actual prejudice unless the first three factors ... all weigh heavily against the government."); Trigg, 507 F.2d at 954 ("Of the four factors to be assessed, prejudice to the defendant is the most critical one.").  The court thus finds that Johnston has established a constitutional violation as to count one, but not as to count two.

Subject to the court's decision whether to allow Johnston to withdraw his plea, count one is, accordingly, due to be dismissed with prejudice.  See Strunk, 412 U.S. at 440 (dismissal is the only remedy for a violation of the constitutional speedy trial right); Mann v. United States, 304 F.2d 394, 397 (D.C. Cir. 1962) ("[A]

40

dismissal based on a finding that the constitutional right to a speedy trial has been denied bars all further prosecution of the accused for the same offense.... [this is] a necessary rule if the constitutional guarantee is not to be washed away in the dirty water of the first prosecution, leaving the government free to begin anew with clean hands.") <u>cert. denied</u>, 371 U.S. 896.

DONE, this the 17th day of July, 2013.

<u>    /s/ Myron H. Thompson    </u>
UNITED STATES DISTRICT JUDGE