IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:09cr203-MHT |
| JOHN ERNEST JOHNSTON | ) | (WO) |

OPINION AND ORDER

The matter is before the court on the government's motion and supplemental motion for reconsideration of the court's finding that defendant John Ernest Johnston's Sixth Amendment speedy-trial right was violated.  United States v. Johnston, 2013 WL 3777315 at *1 (M.D. Ala. 2013) (slip copy).  For reasons that will be explained, the motions will be denied.  The government contends that the court's speedy-trial analysis relied on faulty factual findings.  The government has alleged three such deficiencies; the court examines each in turn.

1.  <u>Negligence</u>

The government asked this court to reconsider its finding that the 14-month delay in Johnston's prosecution is attributable to the government's negligence; it argued that the court incorrectly found that the Middle District of Alabama was aware as of at least February 2011, the month following Johnston's sentencing in the Middle District of Georgia, that Johnston had been sentenced. The government maintained throughout the briefing of this case, at oral argument, and in its motion for reconsideration and supplemental motion for reconsideration, that the government was not aware Johnston had been sentenced because the Middle District of Georgia failed to act on the detainer placed by the Middle District of Alabama.  In essence, the government argued that the negligence was attributable to the errors of another judicial district and should not weigh against it.

Confronted with its own evidence to the contrary, the government now concedes that the court's finding was, in fact, correct.    See Order (Doc. No. 71); Resp. to Ct. Order (Doc. No. 74).   The government also concedes that, for purposes of the Sixth Amendment right to counsel, negligence of the United States Marshal's Service for the Middle District of Alabama is attributable to the "government."    See Order (Doc. No. 77); Resp. to Ct. Order (Doc. No. 78); see also United States v. Cone, 310 Fed. Appx. 212, 217 n.7 (10th Cir. 2008) (unpublished) ("Although the U.S. Marshal's Service was possibly involved in this delay, we attribute any portion of the delay caused by it to the 'government.'   In the Sixth Amendment speedy-trial analysis, the 'government' includes other entities in addition to the prosecutor." (citing Barker v. Wingo, 407 U.S. 514, 531 (1972) (delays attributable to overcrowded courts weigh against the government)); United States v. Johnson, 196 F.3d 1000, 1003 (9th Cir. 1999) ("The Marshal's Service is not some

3

unrelated government entity with no connection to the U.S. Attorney or to this case.  It is the very entity that the U.S. Attorney used as its agent to serve the detainer on [the defendant]."); id. (finding defendant invoked speedy-trial clause of the Interstate Agreement on Detainers Act by delivering his request to the United States Marshal's Service, rather than to the United States Attorney).

In light of the government's concessions and the court's faith in its original reading of the evidence, the court's finding that the government was negligent does not present a basis for reconsidering the court's opinion.

2.  Assertion of the Right

The government next contests the finding that Johnston sent six letters (five from him, one at his direction from his wife), in which he requested to be brought to the Middle District of Alabama to face bank-

robbery charges.  In the government's view, Johnston did not send these letters and therefore did not "assert his right" within the meaning of the third factor of the speedy-trial test.  <u>Barker v. Wingo</u>, 407 U.S. 514, 531 (1972).  The government argues that the United States Attorney for the Middle District of Alabama never received any such letters and that the court should not have credited Johnston's assertion that he sent these letters, because in his first affidavit he stated that, "he did not demand a speedy trial," did not mention sending any letters, and did not mention the letters until after the government raised his failure to assert his right to a speedy trial.

First, the court does not read Johnston's initial statement that he did not "demand a speedy trial" as contradicting his subsequent assertion that he and his wife wrote letters to his prosecutors asking to be brought before the court on the Alabama charges.  In other words, the court finds that Johnston's statement

that he did not "demand a speedy trial" refers to the fact that he did not think that he had formally invoked this specific procedural right; Johnston, who was uncounseled and unaware of the scope of his constitutional right, did not know that he had this right or how to invoke it.  Second, in this court's view, Johnston's initial failure to mention the letters does not reflect a lack of candor, but a lack of understanding of the letters' relevancy.  That a lay defendant would fail to grasp the importance of his pro se letters in analyzing a constitutional speedy-trial violation in unsurprising.  The court credits Johnston's statements in his affidavit, submitted at an evidentiary hearing, that he wrote the letters in question.  Johnston Aff. (Doc. No. 60, Ex. 17) at ¶ 14.  The court also credits his wife's affidavit, in which she testified that Johnston asked her to look up the address for the United States Attorney for the Middle District of Alabama for the purpose of sending these letters, and further testified

that she herself wrote to the United States Attorney asking for a hearing and sentencing on the Alabama robbery in January 2011, again at Johnston's request. Beverly Johnston Aff. (Doc. No. 60, Ex. 18) at ¶ 4.

The government argues that the court should not credit the defense affidavits because the United States Attorneys's Office for the Middle District of Alabama never received any such letters, but the government has not introduced any evidence on this point. The government chose to rest this argument entirely on the statements of government counsel; there has been no evidence offered about the record-keeping practices of the United States Attorney's office (including how pro se letters are handled, whether they are archived, and, if so, how they are archived) and no witnesses have submitted an affidavit to refute Johnston's claims. The court is thus tasked with weighing two defense affidavits against the "unverified, unsworn" assertions of government counsel. Cf. United States v. Cone, 310 Fed.

Appx. 212, 217 n.6 (10th Cir. 2008) (unpublished) (refusing to credit government's assertion that it "promptly" contacted the United States Marshal's Service where the "government's response itself is an unverified, unsworn document."). Government counsel asks the court to accept her statements as "an officer of the court," but there is no evidentiary basis to conclude further that no one else in her office received such letters. While the court personally believes government counsel to be an honest and reliable source, the facts of this very case demonstrate the need for actual evidence.[*] In short, government counsel's bare assertions do not convince the court that the assertions, albeit made in good faith, are

---

[*] The court refers to the difference between government counsel's earlier statements to the court that the Middle District of Georgia failed to act on the detainer filed by the Middle District of Alabama, and her later admission that the Middle District of Georgia did in fact notify the Middle District of Alabama after Johnston was sentenced. While the court appreciates that this mistake was an honest one, the mistake still highlights the need for actual evidence. See discussion supra, section 1.

sufficiently reliable to warrant reconsideration of the decision to credit the defense's evidence.

Furthermore, even if government counsel were correct that the United States Attorney for the Middle District of Alabama did not receive Johnston's letters, Johnston still could have written and sent them.  The importance of this factor of the speedy-trial analysis is not so much whether any particular government agent was "on notice" that the defendant wanted a speedy trial, as the government has an independent obligation to bring defendants to trial in a speedy manner.  Rather, the probative value of this factor is that it reveals whether the defendant himself wanted to go to trial and thus whether he was actually harmed by the delay.  Put another way, courts ask if a defendant asserted his right to a speedy trial so as to determine whether the defendant is now taking advantage of an opportunity that he purposely slept on earlier.  Barker, 407 U.S. at 532 ("The strength of his efforts will be affected by the length of the

delay, to some extent by the reason for the delay, and
most particularly by the personal prejudice, which is not
always readily identifiable, that he experiences.  The
more serious the deprivation, the more likely a defendant
is to complain.  The defendant's assertion of his speedy-
trial right, then, is entitled to strong evidentiary
weight in determining whether the defendant is being
deprived of the right."); id. (by including "assertion of
the right" as one factor among several within the speedy-
trial analysis, the Court meant to .... permit, for
example, a court to attach a different weight to a
situation in which the defendant knowingly fails to
object from a situation in which his attorney acquiesces
in long delay without adequately informing his client, or
from a situation in which no counsel is appointed.").  In
sum, that Johnston sent letters seeking trial in the
Middle District of Alabama is the critical issue; not
necessarily whether counsel for the government read them.

For all these reasons, the court continues to credit the defense evidence showing that Johnston asserted his right to a speedy trial multiple times (informally, through letters sent to federal prosecutors) and finds the government's argument to the contrary unpersuasive.

Finally, the court notes that the government sought to introduce further evidence through counsel's unsworn representations after the court had announced that the motion and supplemental motion for reconsideration were denied; the court has not, and will not, consider this evidence.

3.   Joinder of Charges

The government next asks for reconsideration on the ground that the court inaccurately found that the Middle District of Alabama rejected Johnston's request to have his case consolidated with his Middle District of Georgia case pursuant to Federal Rule of Criminal Procedure 20. The government does not dispute the testimony of Johnston's defense counsel from the Middle District of

11

Georgia that Johnston requested Rule 20 consolidation; rather, it argues that denial of Johnston's request came from the Middle District of Georgia, not the Middle District of Alabama.  Further, the government does not dispel its earlier statement, which the court cited in its opinion, that the government played "phone tag" regarding the Rule 20 consolidation and then the matter was dropped.

The court accepts the government's representation that it did not, itself, deny Johnston's motion. However, this does not call into question the court's speedy-trial analysis, as the court did not consider denial of the Rule 20 motion as evidence that the government's negligence caused the delay in this prosecution.  Indeed, the Rule 20 matter is mentioned as background and is not discussed in the court's analysis at all.  To the extent the court considered the Rule 20 motion, the court viewed Johnston's request to consolidate the charges as evidence that he wanted to face prosecution on the Alabama charges as soon as

possible from the outset of this case.  The government's

disagreement with the court on this matter is not,

therefore, ground for reconsideration.

***

For the above reasons, it is ORDERED that the

government's motion for reconsideration (doc. no. 66) and

supplemental motion for reconsideration (doc. no. 70) are

denied.

DONE, this the 30th day of July, 2013.

                              /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE